May it please the Court. Good morning, Your Honors. Darlene Ricker on behalf of the Gregory Smith. The case is before the Court this morning on a very narrow issue, the one that was certified, which is whether Mr. Smith should have been allowed to cross-examine a witness regarding two similar incidents that may have shown that someone else was the shooter. The controlling Supreme Court case on the issue is Chambers v. Mississippi, which upheld the defendant's right to cross-examine a witness on basic evidence, which is exactly the same issue, the right to cross-examine regarding identity of a shooter. Ms. Ricker, what evidence was there that the two shootings were in any way related? In the incident case, Your Honor, or in Chambers? No, in this case, as a matter of evidence. As I understand the Supreme Court, there has to be some relationship in order to justify the admission of the evidence. And so how did the district court err and abuse its discretion in excluding them from this trial? Yes, Your Honor. Actually, there were three. There was the instant offense of which Mr. Smith was convicted. There were two other similar shootings of the same victim. I understand that the victim was the same, but beyond that, what do you have to tie Why did the district court err in excluding the fact that this guy apparently is a frequent victim? Yes, Your Honor. There has to be either direct or circumstantial evidence linking the third-party culpability. And what was that proof? The proof was the time period, 15 months. These three shootings occurred within the proximity of 15 months. All three times, the same victim was seated in a car with a passenger. And I believe in all three instances, the shooter approached from the passenger side. I mean, there's nothing particularly, unfortunately, particularly unique about that set of circumstances. I mean, there's no sort of signet, is there, that would create some kind of connection? Signature? No, Your Honor. No, Your Honor. But I would argue there were enough similar circumstances to at least pass the balancing test of chambers to have allowed the evidence in. Well, similar in what way? You've identified the commonality, but I guess in response to Judge Reimer's question, you're not alleging that this was the signature or M.O. of the same person. So given your client's occupation as a distributor of unlicensed pharmaceuticals on the street, what do you have to tie those two incidents so that it was relevant to the cross-examination of the surviving victim? I understand, Judge Tallman. The only other link in terms of similarity, and it may sound somewhat laughable, but it's true, is that in all three instances, apparently the shooter was not a very adept shooter. In other words, he went for the king but didn't hit the heart? Apparently he hit the, he hit them, but he sprayed bullets all, he or whomever, sprayed bullets all over the place and hit the passengers as well who were not the intended victims. So if any, that was the, honestly, the only signature that I can identify. But weren't different physical descriptions given of the shooters in the other two incidents? That's correct, Your Honor. In the first instance, I believe it was, they identified two black males. The second was a case, and the third was one person, which couldn't have been my client because he was incarcerated at the time. But the physical description did not necessarily match Gregory Smith? Correct. Correct. So really, Your Honors, all I have to argue is that under the balancing test of chambers, which is the defendant's right to confrontation weighed against the State's interest in its evidentiary rules, which that test has been fully set forth in the briefs. Other than that, Your Honors, I would be happy to respond to any questions the Court may have. And if not, I would submit. Surely you do have some time left to respond if you would like to do that. Thank you, Your Honors. May it please the Court. Deputy Attorney General Theresa Cochran on behalf of Respondent. A third party's mere motive or opportunity is simply not enough to establish evidence linking that individual to the commission of a crime. In this case, there was no evidence whatsoever that anyone other than Petitioner was at the scene of the crime or was the shooter. There was direct evidence from the victim, Mr. Thames, identifying Petitioner as the shooter. The man who was with Petitioner earlier that evening, his friend, also testified that he overheard Mr. Thames and the Petitioner arguing in the bar before the shooting. And he was present and watched the Petitioner walk up to the car. He did not actually see the shooting, but he heard gunshots. And then he, the Petitioner came back to the car and told his friend, I finally got him. There was no evidence describing any other car at the scene, no evidence describing anyone else arguing with the Petitioner or, excuse me, with the victim on that particular evening. And the fact that this victim was unpopular, that's not enough to establish third party culpability evidence. And Chambers is very distinguishable. In that case, a third party's signed confession was excluded. And that was evidence that undermined the fundamental aspects of the defense. And that simply did not happen here. And unless the court has further questions, I will submit on the brief. Didn't this court in Vallejo say that the evidence, that evidence would still be relevant even when the defense theory is purely speculative? I think they quoted Wigmore and said that basically it's not for the court to decide what's fantastic and what's not fantastic. It's for the jury to decide. I'm sorry, I'm not familiar. Which case is Vallejo? U.S. v. Vallejo, 237 F. 3rd, 1008 to 2001 decision. And it basically stands for the proposition, as I understand it, that it's for a jury to decide what is believable and not believable, what is fantastic and not fantastic, and recommends that the court not exclude evidence that might be exculpatory. I apologize. I'm not familiar with the facts of that case. However, in Spivey v. Rocha, this circuit held that in that case the victim was a gang member, and the defense wanted to get in evidence that the victim was a gang member. And for that reason, rival gang members may have a motive to shoot him. And that's similar to this case. And based on Spivey v. Rocha, I would submit that speculatory evidence is not enough. And in any event, the question for us, since this is a post-EDPA case, would be whether it's contrary to clearly established Supreme Court. Absolutely. And even if a court could reach a contrary opinion of whether or not this evidence should have been admissible under the ADEPA standard, the court of appeals decision was not unreasonable, and it did not contradict Chambers. Thank you, Your Honor. All right. Anything? All right. Thank you for the argument to this case. The matter just argued will be submitted and will next hear McNeil. Ms. Cash. Thank you both, Counsel. I appreciate your argument. Good morning, Your Honors. Lisa Bassas for Appellant. Mr. McNeil. The State contends Mr. McNeil cannot meet the standard for Federal habeas relief. There being no Supreme Court precedence which established that an ex parte communication between a judge and a juror violate the right to counsel. Here the basis for habeas relief is clear and well established. In Arizona v. Fulminante, the United States Supreme Court held that the deprivation of the right to counsel involving a critical juncture of the proceedings is a structural defect, not subject to harmless error analysis. More specifically, the denial of the right to counsel is a structural defect requiring automatic reversal. Is the denial here, Counsel, the fact that the lawyer was not actually present during the colloquy between the judge and the juror? Because you concede, do you not, that counsel was consulted by the trial judge before he had the meeting with the juror? Yes. Counsel was consulted in advance, much like the circumstances in Gypsum. The problem here is that because he wasn't present, he wasn't in a position to evaluate what subsequently transpired. Well, we did have a transcript, though, did we? I mean, you certainly could have reviewed the transcript and then requested some remedial relief if you thought it appropriate. In any meaningful way, the transcript was not provided until the time of sentencing. The juncture where the court, where juror number nine asked his question was during the deliberative process in reference to the truth of the prior conviction allegations. By the time the transcript was provided, it was too little too late. Did he move for a new trial at that point? I know he moved for a mistrial after the colloquy took place. No, I understand that. But after he received the transcript? I don't believe that he did. It was sentencing. And he didn't do so on the basis of the colloquy, not knowing what actually had transpired. So is it your position that we should articulate a rule that says all communications between the court and the jury must involve the presence of counsel? I think it's a good rule, but I don't think we need to go so far here. I think all we need to do is limit ourselves to the facts of this case. This was a critical juncture. You're asking us to find structural error. Yes. I'm trying to explore with you how far that rule would apply with regard to the alleged Sixth Amendment violation. I think that where there is a conversation between a judge and a juror involving the law or the evidence, as occurred here, the absence of counsel is critical and results in a structural error, which cannot be remedied by any kind of harmless error analysis. Would the inquiry to the judge by the juror involve some form of jury tampering, in which there might be a suspicion that either counsel for the defense or people associated with the defendant might be involved? Would it be appropriate in that case for the judge to meet without counsel in order to explore what the tampering had consisted of? Actually, no. I don't believe so. I do believe that counsel needs to be present in order to protect the interest of defendant. Was your answer to my question, or no? I believe that counsel needs to be present in that kind of situation. Is my hypothetical where the court might be investigating a corruption of the administration of justice in which the lawyer might be involved? It may not be the same lawyer. I do believe counsel needs to be present, and it may be appropriate. Your answer is yes, in all instances, no exception. Not in all instances. In an instance where there is a discussion with the juror about the evidence or about the law, I do believe that it is a structural error if counsel is not present. Now, in your example, if it turns out there is an instance of jury tampering, I believe it may be appropriate to appoint separate counsel for defendant to protect defendant's interests and to be present and be aware of the conversation that takes place during that circumstance. I'm not saying that the same lawyer should be present. But I do believe that we know what it is that the juror is going to tell the court, right? I mean, how is the judge going to make that determination until he finds out what it is that's bothering the juror? Well, that's true that we don't know what it is, but during the deliberative process, we do know that this is defined by the law of the circuit as a critical stage of the proceedings. And we do know that where in an instance where we have a note that says, what happens in the event we have a hung jury, and then one of the jurors separately decides to meet or requests to meet with the judge, this is a critical juncture. Well, you just said the law of the circuit. The point, again, is that it's the law of the U.S. Supreme Court. It matters. And it's hard for me to see how you get over Russian's explicit statement that ex parte communications are not inevitably not subject to harmless error analysis. I think we have to look at the facts of Russian. In Russian. Sure. But the point is, I mean, the point is that the U.S. Supreme Court has never said that this will err. So if we were to say it and adopt the rule that you have just contended with Judge Tolman for, that would be, A, a new rule that's TIG barred, and, B, it would not be dictated by any existing Supreme Court precedent. Actually, I respectfully disagree with the Court. I believe that the groundwork is there. Well, the groundwork may be there. That Fulminante does define as a structural error the deprivation of the right to counsel during a critical juncture in the proceedings. This is a critical juncture in that the jury was, this was a deliberating jury that was obviously unable to make up its mind. The juror had a question regarding both the law and the manner in which it was to apply the evidence, as well as the manner in which the Court intended the evidence. Furthermore, we also have a Court that misadvised the juror in a very, very significant way. How did the Court misadvise the juror? As the district court found, first of all, the Court said, I have substantial sentencing discretion. Can you contend that that's not true? Not under three-strikes law, no. No. I think that the trial court judge had very, very little discretion. Once those priors were found to be true, it was basically automatic to apply the three-strikes law and impose a sentence of 25 years to life. Had some discretion under California's three-strikes law with regard to imposing additional time for the prior prison sentences? Well, the Court may, in its discretion, strike a prior. In the event, defendant moves under Romero, and then the Court finds that the Williams factors properly apply. However, the Court must apply the three-strikes law unless it finds that defendant — this is one of the rare cases, and that's according to California Supreme Court law — the defendant falls into one of the enumerated exceptions. Now, the Supreme Court — Doesn't that constitute discretion, even though the Court may not exercise it very often? Or if it does exercise it, it has to meet a fairly strict statutory test? It is a conditional discretion, and it's subject to defendant having made a motion under Romero to strike a strike prior. I don't understand what's wrong about what the judge said to the juror. And we know what he said because we have the transcript. Right. But unless — How is that not true? Unless defendant, after trial, makes a Romero motion, the judge has no discretion. But, of course, at that stage, when he was talking to the juror, we weren't at that point. Right. Right. So a Romero motion was still possible back then. It was still possible. So I ask my question again. How is it that the trial judge's statement to the juror was not true? It is hypothetically possible that the judge would have some kind of sentencing discretion. But in order — under the law, under the California Penal Code, and I believe it's Section 1237, as well as 667d through i, the Court does have no discretion to strike a strike prior. Now, there are certain enumerated exceptions that are given to the Court under the case law. But unless — but the judge has no discretion unless the motion is filed. Whether that's right or whether it's not right, the Court in open court with counsel present repeated what he had said, including the statement that he had discretion. No. Well, I'm sorry. Go ahead. Well, I'm reading the transcript. And it — and he repeats what he said. Asked the juror if it was substantially accurate, and then asked counsel and gives counsel the opportunity to ask clarifying questions, or counsel could have squawked if counsel thought something that he had said was inaccurate. Didn't do any of those things. Actually, I'm — and I apologize to the Court. If the Court looks at the excerpt to record at page 82 through 83, the full colloquy is set forth verbatim. And one of — there is a back and forth between the judge and the juror. No, no. I'm talking about after the guest party communication. Yes. I don't believe that the Court accurately summarized the extent of the conversation or accurately relayed to defense counsel what exactly it was he apprised the juror of or what the juror's exact concerns were. I believe that had defense counsel been present, having actually heard the colloquy, would have risen to a level of alarm that was not sufficiently conveyed by the Court's comments. Well, if he was so alarmed, why didn't he make an appropriate motion after he had the transcript? Well, I believe it came too little too late. It came at the time of sentencing. The time to make the — But it's too late at that point to move, to set aside the conviction on the grounds that the judge essentially erred in what he said to the juror, is it? I can't answer after the fact why he didn't do it. Perhaps it was part of the strategic decision. Or perhaps he looked at the transcript and thought, you know, close enough. Well, evidently, perhaps he did, but we don't know. We're second-guessing. The point is the time when it really would have made a difference, where he could have requested a clarifying instruction. And in essence, what it was, was a request for a supplemental instruction. And I don't believe that was adequately conveyed in the Court's comments, which — When you say that you think that punishments are not for your determination and you should not consider them — Yes. And isn't that an accurate statement of the law? That is an accurate statement of the law. But then — What would your supplemental instruction have read? Well, Juror Number 9 then wanted to know how much sentencing discretion the Court had. And we don't answer that question. Right. He said the Court — but the Court did answer the discretion. He said he has discretion. He also went on to reiterate, you're not supposed to pay attention to punishment. Juror Number 9 continued to say, if it turns out that — he gave him a number of scenarios. If it turns out the Court doesn't have discretion, then I can't render a verdict. If it turns out the judge does have discretion, then I can't execute my duties. Now, I believe that had defense counsel heard that, he would have evaluated the situation very differently. He perhaps would have moved to discharge the juror, which he did not do. In fact, it was the prosecution — or the State that suggested that the juror be discharged. And I believe the defense counsel, under a misimpression as to what transpired, didn't join in that. That's why I believe after the trial, when he did get a copy of the transcript, it was really too little — it was too late to do anything. What would have been appropriate would have been a motion to discharge the jury, perhaps a motion for a — perhaps a request for a clarifying instruction. And, Your Honor, I haven't formulated what that would have been. I just know that counsel could have responded at a moment when the need arose and not after the conviction occurred. Thank you. Your time has expired. All right. Thank you, Your Honors. May it please the Court. My name is Donald DeNicola. I'm the Deputy Attorney General for the Respondent. I think that there are two basic facets to the appellant's argument, and both of them fail under the ADPA. The first is that there's no clearly established law under the United States Supreme Court precedence that a colloquy between a judge and a juror is a critical stage of the prosecution in which counsel must be present. Don't you — didn't the — didn't the district court find that not only did the colloquy perhaps misstate the true lay of the land with regard to a court's discretion, but that also it impacted — it did have an impact on the jury deliberations? And if that's so, how can it — how can it not have been a critical stage in the proceedings? Well, I think taking them both in one after the other, first, I don't — the district court might have found that the judge didn't convey to the juror the proper scope of his discretion, but I don't think that finding is plausible under California law. The California Court of Appeal found, as a matter of fact, that the juror was concerned that the judge would have no discretion. And under California law, the judge certainly has discretion to strike a strike or to strike two strikess in a three-strikes prosecution. So I don't think there was anything misleading in what the judge told the jury about the scope of his discretion. And I also think that it's kind of a red herring because it's an area of the law that the juror is not supposed to be considering in the first place. Do you disagree with the district court's finding that, in fact, the statement that was made had an impact and affected the verdict? Well, I think I disagree with that, too, yes, because I think that's speculative. And under neither, the harmless error analysis would focus on the effect — whether the circumstances prove beyond a reasonable doubt that a rational jury would have its defendant guilty. I think the focus on that is on a rational jury in the abstract and not on the quiddities of an individual juror. That's also a hallmark of Sixth Amendment jurisprudence. This is a Sixth Amendment claim, and the Supreme Court recognized in Strickland v. Washington and in cases like Lockhart v. Fretwell that the prejudice analysis in a Sixth Amendment claim hypothesizes a reasonable jury and doesn't inquire into the individual personalities of the individual jurors. Here, the juror at issue was basically saying that he couldn't follow his oath and wanted to consider sentencing. The judge told him to consider sentencing. But you would agree that if a defendant is denied counsel and has not effectively waived counsel, that that failure to provide counsel is structural error, correct? There's a long line of cases that say that the deprivation of the right to counsel in a criminal trial without an adequate waiver is structural error, correct? Yes, if there is a deprivation of a right to counsel at a critical stage. So the issue here is whether or not this is a critical stage. Yes, and that is an issue that the U.S. Supreme Court explicitly left open in Russian v. Spain. And under the AEDPA, there necessarily can be no clearly established Supreme Court holding that that type of a colloquy involves a critical stage when the Supreme Court left the question open. From your perspective, a conversation between the judge and a jury, a juror, during deliberations, is not a critical stage of the trial? From my perspective, there's no clearly established Supreme Court law that says it's a critical stage of the trial. And under Lockyer, that ends the inquiry for a federal habeas court. Secondly, I think there's a similar problem with the appellant's second argument, which is the structural error argument. There's no Supreme Court case that says, since there's no Supreme Court case that says this is even constitutional error, there's no Supreme Court case that says that this kind of error, even if it were deemed error, would be structural error. And the kinds of cases the Supreme Court has deemed to be structural error are those where the Court says there — it would not be worth the inquiry into whether or not the error was harmless. The inquiry would be too — too elusive. And it would also be the kind of error that would make extremely unlikely, under the circumstances that the defendant received a fair trial. Now, here you have a situation where, even if there were an error, I think a reasonable argument could be made that the error was cured. In effect, you had a redo of the entire process. The judge spoke to the juror. The judge told the juror not to consider sentencing, and the judge told the juror not — that the judge retain discretion. Then the lawyers entered the room. The judge repeated to the lawyers that that's what he had told the juror. And the jury — the counsel, both of them had an opportunity specifically to question the juror further on the subject. So I think even if there were a deprivation of the rights of counsel, an issue that I think is foreclosed under the ADPA, this case raises a question of whether or not, in effect, the error was cured by having a new hearing. And under Lockhart v. Fretwell, footnote, a State judge could reasonably determine that there's a harmless error inquiry even at the heels of a Sixth Amendment allegation, a violation of the Sixth Amendment. So you would limit, I guess, the analysis to the structural error, conclude there was no structural error, concede there might have been constitutional error of a non-structural nature, but would argue that it was harmless based upon the opportunity to talk to the juror, which nobody took the judge up on? Well, I think that would be a perfectly reasonable, correct and adequate way of disposing of this case. I don't think I would concede that the colloquy between the judge and the juror was a violation of the defendant's Sixth Amendment rights. But argumentally, I would. You've kind of switched position on that argument, haven't you? I was a little bit puzzled by the position that the State took below. And it seemed to me that you did concede for purposes of the harmless error analysis that there had been an error. I don't do it. But I think you were consistent in saying it wasn't structural. Yes. I don't think we conceded that in the court below. I will grant the court that the briefing on this issue focused almost exclusively on the question of whether or not the error was harmless under Brecht. I don't think that that was the best way for us to go. But nevertheless, the return filed in the district court below did start off with the assertion separate from the harmless error assertion that this was not a case – this was a case where the State court had adjudicated the claim of the merits and the adjudication ultimate ruling contrary to or an unreasonable application of Supreme Court holdings. I think that, under the circumstances, was sufficient to – should be deemed sufficient to preserve that issue. And particularly in light of the fact that we were the prevailing party below, I think this Court can uphold the district court decision on any ground that's a purely legal ground that's apparent from the record. So I would – I would urge both grounds on the court. But certainly, the analysis that Your Honor has suggested would be an appropriate one to dispose of the case on harmless error. If there are no further questions, Your Honor, I'll stop. Thank you, Your Honor. Counsel, for your argument in this matter, and a matter just argued, will be submitted.
judges: Rymer, Tallman, Leighton